# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

OCTAVIA MERTENS, ON BEHALF OF THEMSELF AND OTHERS SIMILARLY SITUATED; ANGELICA HERRERA, ON BEHALF OF THEMSELF AND OTHERS SIMILARLY SITUATED; BELEN CADENA, ON BEHALF OF THEMSELF AND OTHERS SIMILARLY SITUATED; KELLY SANCHEZ, ON BEHALF OF THEMSELF AND OTHERS SIMILARLY SITUATED; MAGGIE MONTES, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED; BREONA HORNE, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellees*

*v.*

BENELUX CORPORATION, doing business as PALAZIO MEN'S CLUB, ANTHANASES STAMATOPOULOS, MICHAEL MEALEY,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
Civil Action No. 1:24-cv-00276-RP
Hon. Robert Pitman, Presiding

## BRIEF OF APPELLANTS

William X. King
Texas Bar No. 24072496
MᴄDowell Hetherington LLP
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Tel.: (713) 221-3840
Fax: (713) 337-8850
william.king@mhllp.com
**COUNSEL FOR APPELLANTS**

# CERTIFICATE OF INTERESTED PERSONS

Case No. 1:24-cv-00276-RP, *Octavia Mertens., et al. v. Benelux Corporation, d/b/a Palazio Men's Club, et al.*, United States District Court, Western District of Texas, Austin Division.

**\*\*\*\*\*\***

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate their possible recusal or disqualification.

**<u>Defendants/Appellants</u>**
Benelux Corporation d/b/a
Palazio Men's Club ("Club")
Anthanases "Tom" Stamatopoulos
Michael Mealey

**<u>Plaintiffs Below</u>**
Belen Cadena (Appellee)
Angelica Herrera
Octavia Mertens
Kelly Sanchez
Maggie Montes
Breona Horne

**<u>Putative Opt-Ins</u>**
Louisa Arocha
Ana Pierson
Andrea Radzik
Brianna Haynes

**<u>Appellants' Counsel</u>**
William X. King
McDowell Hetherington LLP
1001 Fannin Street, Suite 2400
Houston, Texas 77002

**<u>Appellee's Counsel</u>**
Ryan Estes
Caitlin Boehne
Tanner Scheef
Kaplan Law Firm
2901 Bee Cave Road, Suite G
Austin, Texas 78746

*/s/ William X. King*
William X. King
Counsel for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully suggest that oral argument is not necessary and will not significantly aid the Court's decisional process. This case involves well-established principles of contract interpretation under Texas law and the record is not voluminous. However, if the Court believes oral argument is warranted, Appellants respectfully request to participate.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................................................. i

Statement Regarding Oral Argument ....................................................................... ii

Table of Authorities .................................................................................................. iv

Jurisdictional Statement ............................................................................................ 1

Statement of Issues Presented for Review ............................................................. 1

Statement of the Case ............................................................................................... 2

Summary of the Argument ........................................................................................ 6

Argument ..................................................................................................................... 7

   I.  Standard of Review ........................................................................................... 7

   II.  Texas Law Does Not Limit Evidence of Mutual Assent to Signatures ............. 7

      A.  Contract "execution" requires a manifestation of mutual assent. ........ 7

      B.  Parties must "clearly and explicitly" express their intent to make signatures a condition precedent to formation. ................................. 8

   III. No Language in Cadena's Arbitration Agreement Requires the Club's Signature. .................................................................................................... 11

      A.  The "by signing" clause reveals no intent to make signatures a condition precedent. ................................................................. 12

      B.  The "by signing" passage recognizes—but does not *require*—signatures as *one* method of manifesting assent. ............................... 14

      C.  Courts do not interpret similar "by signing" language as clear and explicit evidence of intent absent conditional wording. ...................... 15

   IV. The Parties' Acts Show Their Mutual Assent to the Arbitration Agreement. ................................................................................................ 19

      A.  Cadena's objective conduct shows her acceptance of the Club's offer to arbitrate. ................................................................. 19

      B.  The Club's actions manifested its mutual assent. ............................. 21

Conclusion ................................................................................................................ 22

Certificate of Service ............................................................................................... 23

Certificate of Compliance ....................................................................................... 24

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aprill v. Aquila*,
No. 20 C 04657, 2022 WL 614984 (N.D. Ill. Mar. 1, 2022) ........................... 12, 15

*Craddock v. LeClair Ryan, P.C.*,
No. 3:16-CV-11, 2016 WL 1464562 (E.D. Va. Apr. 12, 2016) ........................ 14, 15

*Flores v. BJ's Rest. Operations Co.*,
No. 23-50038, 2023 WL 6533452 (5th Cir. Oct. 6, 2023) ............................ passim

*Flores v. BJ's Restaurants, Inc.*,
No. A-21-CV-1185-LY, 2022 WL 17732340 (W.D. Tex. Oct. 17, 2022) ............. 18

*Hickerson v. Pool Corp.*,
No. 19-CV-02229-CMA-STV, 2020 WL 5016938 (D. Colo. Aug. 25, 2020) ...... 15

*Huckaba v. Ref-Chem, L.P.*,
892 F.3d 686 (5th Cir. 2018) ........................................................ passim

*In re Hudgins*, 188 B.R. 938 (Bankr. E.D. Tex. 1995), aff'd sub nom. No. 4:95 CV
341, 1998 WL 34262016 (E.D. Tex. July 1, 1998) .................................... 9

*Mertens v. Benelux Corp.*,
No. 1:24-CV-00276-RP, 2024 WL 4999199 (W.D. Tex. Sept. 30, 2024), report
and rec. adopted, 2024 WL 4692115 (W.D. Tex. Nov. 6, 2024) ........................... 1

*Robertson v. Fiesta Rest. Group, Inc.*,
No. 3:17-CV-00384, 2018 WL 3130677 (S.D. Tex. June 8, 2018), report and rec.
adopted, 2018 WL 3121877 (S.D. Tex. June 26, 2018) ......................................... 15

*Soni v. Solera Holdings, L.L.C.*,
No. 21-10428, 2022 WL 1402046 (5th Cir. May 4, 2022) .................................... 17

*Weaver v. Metro. Life Ins. Co.*,
939 F.3d 618 (5th Cir. 2019) ..................................................................... 19

**STATE CASES**

*Ames v. Great S. Bank*,
672 S.W.2d 447 (Tex. 1984) ................................................................... 20

*Angelou v. African Overseas Union*,
33 S.W.3d 269 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ................ 19, 20

*Arbor Windsor Court, Ltd. v. Weekley Homes, LP*,
  463 S.W.3d 131 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ........... 9, 10

*Border Gateway, L.L.C. v. Gomez*,
  No. 14-10-01266-CV, 2011 WL 4361485 (Tex. App.—Houston [14th Dist.] Sept.
  20, 2011, no pet.)................................................................................................ 10

*Criswell v. European Crossroads Shopping Ctr., Ltd.*,
  792 S.W.2d 945 (Tex. 1990)................................................................... 9, 12

*Firstlight Fed. Credit Union v. Loya*,
  478 S.W.3d 157 (Tex. App.—El Paso 2015, no pet.) ............................... 10, 18, 21

*GSC Wholesale, LLC v. Young*,
  654 S.W.3d 558 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) 8, 13, 15, 17

*In re AdvancePCS Health, L.P.*,
  172 S.W.3d 603 (Tex. 2005)................................................................................. 8

*In re Bunzl USA, Inc.*,
  155 S.W.3d 202 (Tex. App.—El Paso 2004, no pet.) .......................................... 16

*In re Macy's Tex., Inc.*,
  291 S.W.3d 418 (Tex. 2009) ................................................................................ 8

*In re MHI P'ship, Ltd.*,
  No. 04-01-00253-CV, 2002 WL 341587(Tex. App.—San Antonio Mar. 6, 2002,
  no pet.)................................................................................................................. 9

*In re Polymerica, LLC*,
  296 S.W.3d 74 (Tex. 2009) .................................................................................. 8

*McGehee v. Endeavor Acquisitions, LLC*,
  603 S.W.3d 515 (Tex. App.—El Paso 2020, no pet.) .......................................9, 13

*Mid–Continent Cas. Co. v. Global Enercom Mgmt., Inc.*,
  323 S.W.3d 151 (Tex. 2010) ............................................................................ 7, 8

*Phillips v. Carlton Energy Group, LLC*,
  475 S.W.3d 265 (Tex. 2015) ................................................................................ 8

*Rockstar Remodeling & Diamond Decks, LLC v. Taddia*,
  No. 03-19-00657-CV, 2020 WL 1540740 (Tex. App.—Austin Apr. 1, 2020, no
  pet.)...................................................................................................................... 9

*Schwarz-Jordan, Inc. of Houston v. Delisle Const. Co.*,
  569 S.W.2d 878 (Tex. 1978) .............................................................................. 10

*Simmons & Simmons Const. Co. v. Rea*,
  155 Tex. 353 (1955) ............................................................... 8

*Tecore, Inc. v. AirWalk Communications, Inc.*,
  418 S.W.3d 374 (Tex. App.—Dallas 2013, pet. denied) ...................................... 14

*Wright v. Hernandez*,
  469 S.W.3d 744 (Tex. App.—El Paso 2015, no pet.) ................................... 16, 21

## STATUTES

26 U.S.C. § 7434 ...............................................................1, 3

28 U.S.C. § 1331 ............................................................... 1

29 U.S.C. § 201 ............................................................... 1

29 U.S.C. § 203 ............................................................... 3

29 U.S.C. § 206 ............................................................... 3

9 U.S.C. § 16 ............................................................... 1

## OTHER AUTHORITIES

Restatement (Second) of Contracts (Am. L. Inst. 1981)

  § 22 ............................................................... 8

  § 24 ............................................................... 19

  § 26 ............................................................... 20

  § 30 ...............................................................10, 14

  § 60 ............................................................... 14

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because this action was brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and 26 U.S.C. § 7434.

This Court has appellate jurisdiction under the Federal Arbitration Act ("FAA"). 9 U.S.C. § 16(a)(1). This is an appeal from the district court's "Order" dated November 6, 2024. ROA.258. The Order adopted the "Report and Recommendation of the United States Magistrate Judge" ("R&R"), ROA.217, recommending denial of Appellants' "Partially Opposed Motion to Compel Arbitration and Dismiss Under Rule 12(b)(3)." ROA.56.[1]

Appellants timely filed their notice of appeal on November 25, 2024. ROA.272.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. In the absence of any clear or explicit conditional language indicating the parties intended to make their signatures a mandatory condition precedent to formation of an arbitration agreement, does one party's failure to sign mean it did not assent, and no contract formed under Texas law?

---

[1] The R&R and Order are available on Westlaw. *Mertens v. Benelux Corp.*, No. 1:24-CV-00276-RP, 2024 WL 4999199 (W.D. Tex. Sept. 30, 2024), report and rec. adopted, 2024 WL 4692115 (W.D. Tex. Nov. 6, 2024).

# STATEMENT OF THE CASE

## I. Cadena Signs the Arbitration Agreement as Both "Employee" *and* "Club."

Benelux Corporation operates a club in Austin, Texas called "The Palazio" ("Club"). In early 2020, the Club distributed Arbitration Agreements to existing and new employees. ROA.74-75. Among other things, the Arbitration Agreement requires that the "Club" and "Employee" individually arbitrate work-related "Non-Administrative Claims" and describes the agreed arbitration process. ROA.79-80.

In February 2020, the Club offered the Arbitration Agreement to Appellee Belen Cadena, who worked as a waitress. Cadena initialed and dated each page. On the last page, she signed her name in the signature blocks for the "Employee" *and* "Club." ROA.83.

## II.   The Club Moves to Enforce Cadena's Arbitration Agreement.

Four years later, Cadena and three other waitresses[2] filed their Original Complaint against the Club and two individual defendants: the Club's general manager, Mike Mealey, and its owner, "Tom" Stamatopoulos. ROA.9. The waitresses sued all defendants for alleged violations of the FLSA's minimum wage and tip requirements. ROA.18; *see* 29 U.S.C. §§ 206, 203(m). They also asserted a claim against the Club for the purported "fraudulent filing of Plaintiffs['] . . . income tax returns[.]" ROA.18; *see* 26 U.S.C. § 7434.

All four plaintiffs signed Arbitration Agreements. ROA.83, 88, 93, 98. After the parties' counsel conferred, three plaintiffs elected not to oppose being compelled to arbitrate. *See* ROA.51-54. Cadena, on the other hand, opposed on grounds that the Club did not sign her Arbitration Agreement. ROA.56.

In April 2024, the Club moved to compel all plaintiffs to arbitration. ROA.56-71. The individual defendants joined the motion, asserting their status as third-party beneficiaries under their contracts. ROA.68. In support, the Club attached copies of the plaintiffs' Arbitration Agreements, ROA.79-98, along with Mealey's declaration. ROA.74-78.

---

[2] The claims of the other waitresses—Octavia Mertens, Angelica Herrera, and Kelly Sanchez—are not at issue in this appeal. ROA.260.

In his declaration, Mealey explained that as one of the Club's representatives, his typical practice was to review papers left on his desk, countersign employee-signed Arbitration Agreements, and then send those contracts to the Club's corporate office where they are kept as business records. ROA.75-77.

Mealey also explained why he did not sign Cadena's Arbitration Agreement. To the best of his recollection, while reviewing employee-signed Arbitration Agreements on February 27, 2020, Mealey noted that the signature blocks for both "Club" and "Employee" were fully signed. But in his haste, he failed to realize that it was Cadena who had signed in both spaces. ROA.76.

Cadena seized upon the absence of the Club's signature in her response. ROA.113-121. According to Cadena, the "by signing" text above the signature blocks "could not more plainly indicate that the intent of Defendants . . . was to require their signature to be bound . . . ," so therefore the absence of the Club's signature meant "there was no agreement to arbitrate." ROA.116.

Cadena offered her own declaration. ROA.138-139. While she confirmed signing the Arbitration Agreement, Cadena could "not recall why [she] also signed in the Benelux signature block." ROA.138. But Cadena was certain that her signatures "do[] not indicate my intent to be bound . . . if Benelux did not sign it[.]" ROA.138-139.

**III.** **The District Court Denies the Club's Motion.**

On September 30, 2024, the magistrate judge recommended denying the Club's motion to compel arbitration. ROA.225. With respect to Cadena, the magistrate judge found that the "by signing" text above the Arbitration Agreement's signature blocks constituted "clear and express language that the parties must sign the agreement to give it effect." ROA.224. According to the court, the Club's failure to sign meant the parties' contract "was never executed and is not enforceable." ROA.224.

The Club timely objected to the R&R. ROA.231. The Club laid out the reasons why the "by signing" language does not constitute a condition precedent to formation under Texas law, *e.g.*, there is no "clear and explicit language" in the agreement indicating "that the only way the parties intended to establish execution . . . required the Club's signature." ROA.235.

On November 6, 2024, the district court adopted the R&R, also concluding that the Club's failure to sign meant "there is no valid and enforceable arbitration agreement between them and Cadena." ROA.258.[3] This appeal followed. ROA.272.

---

[3] Since the R&R appeared to recommend denying the Club's motion as to the three unopposed plaintiffs, the district judge clarified that the Club's motion *was* granted as to Mertens, Herrera, and Sanchez. ROA.259.

# SUMMARY OF THE ARGUMENT

The Club is entitled to enforce Cadena's Arbitration Agreement because it met its burden of proving all elements of a valid contract under Texas law, including the "execution" element required for contract formation.

First, signatures are not the *sine qua non* of contract formation. If contracting parties want to make signing the *only* method of expressing mutual assent, their agreement must feature clear, explicit, and unequivocal language saying so. The parties here did not use that type of phrasing. Nothing in the Arbitration Agreement provides that they 'must' or 'shall' sign the contract to be bound. Nor does the contract state that the parties do not agree 'unless,' 'until,' or 'only if' they sign.

Second, in the absence of imperative language, the "by signing" clause cited below as the basis for denying the Club's motion is not 'clear and specific' evidence of intent. This provision is most reasonably interpreted as the parties' acknowledgement that they may sign to represent their assent. But that does not mean they *required* signatures as a condition to contract formation.

Third, the undisputed evidence shows that the parties mutually manifested assent. Cadena signed the Arbitration Agreement and returned it to the Club. The Club's conduct before and after Cadena signed established its assent. As a result, the Arbitration Agreement is a binding contract that must be enforced.

# ARGUMENT

## I. Standard of Review

A district court's ruling on a motion to compel arbitration is reviewed *de novo*. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). "Enforcement of an arbitration agreement involves two analytical steps: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement." *Id*. This appeal focuses solely on the first step. The existence of a valid arbitration agreement is a question of law reviewed *de novo. See Flores v. BJ's Rest. Operations Co.*, No. 23-50038, 2023 WL 6533452, at *1 (5th Cir. Oct. 6, 2023).

## II. Texas Law Does Not Limit Evidence of Mutual Assent to Signatures.

To prove that a valid contract formed, Texas law requires proof of five elements: "(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Flores*, 2023 WL 6533452, at *1 (citation and quotation marks omitted). The last element is central to this dispute.

### A. Contract "execution" requires a manifestation of mutual assent.

The "execution" of a contract "includes the performance of all acts necessary to render it complete as an instrument." *Mid–Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) (citation and internal quotation marks omitted). One of the acts needed to make a written contract complete is an

expression of mutual assent. *See Simmons & Simmons Const. Co. v. Rea*, 155 Tex. 353, 358 (1955). That manifestation "ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party." Restatement (Second) of Contracts § 22(1) (Am. L. Inst. 1981).

Though "signature and delivery are often evidence of the mutual assent required for a contract, they are not essential." *Phillips v. Carlton Energy Group, LLC*, 475 S.W.3d 265, 277 (Tex. 2015). The Texas Supreme Court has repeatedly held that "[f]or a signature to be the *only* way to manifest assent to an agreement, the parties must 'explicitly require signatures as a condition of mutual assent'" *GSC Wholesale, LLC v. Young*, 654 S.W.3d 558, 566 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (emphasis added) (quoting *Mid–Continent*, 323 S.W.3d at 156).[4]

## B. Parties must "clearly and explicitly" express their intent to make signatures a condition precedent to formation.

Whether contracting parties require signatures as a condition precedent to formation is a question of their intent as expressed in the writing itself. *See Criswell*

---

[4] *See, e.g.*, *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) ("[W]e have never held that the employer must sign the arbitration agreement before it may insist on arbitrating a dispute with its employee."); *In re Macy's Tex., Inc.*, 291 S.W.3d 418, 419 (Tex. 2009) ("The FAA contains no requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed."); *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) ("[N]either the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties."); *Simmons*, 155 Tex. at 358 ("[I]f there is a writing, there need be no signatures unless the parties have made them necessary at the time they express their assent . . . .") (citation omitted).

*v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). While courts use the traditional tools of contract interpretation to divine intent, important qualifications apply since the court's "goal is to determine whether the parties intended that the right or responsibility at issue be conditional." *See Arbor Windsor Court, Ltd. v. Weekley Homes, LP*, 463 S.W.3d 131, 136 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

First, to decode the parties' intent, courts look for conditional language "such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language . . . ." *Criswell*, 792 S.W.2d at 948. There is no lack of caselaw illustrating the point that the bedrock of a condition precedent is some form of conditional or mandatory phrasing.[5] And even if that category of language does appear, those words "must connect the condition precedent to the conditioned obligation." *Id.* The

---

[5] *See, e.g., McGehee v. Endeavor Acquisitions, LLC*, 603 S.W.3d 515, 524 (Tex. App.—El Paso 2020, no pet.) (finding no condition precedent where contract did "not state that the PSA is valid and enforceable *only if* it is executed and delivered at closing."); *Rockstar Remodeling & Diamond Decks, LLC v. Taddia*, No. 03-19-00657-CV, 2020 WL 1540740, at *1 (Tex. App.—Austin Apr. 1, 2020, no pet.) (finding condition precedent existed where contract stated that "[t]he effective date of this agreement *shall be* the date the agreement is signed by the Purchaser . . . *subject to acceptance* by Rockstar Remodeling . . . .") (cleaned-up); *In re MHI P'ship, Ltd.*, No. 04-01-00253-CV, 2002 WL 341587, at *2 (Tex. App.—San Antonio Mar. 6, 2002, no pet.) (finding signatures required where contract provided that it "*shall become* effective as of the date it is signed and accepted by Seller's management" and "*shall not be binding* upon Seller *until such time* as it is also executed by a representative of Seller's management."); *In re Hudgins*, 188 B.R. 938, 943 (Bankr. E.D. Tex. 1995), aff'd sub nom. No. 4:95 CV 341, 1998 WL 34262016 (E.D. Tex. July 1, 1998) (explaining that "'signed *contingent upon* Bill Stephens signing' . . . clearly makes Bill Stephens' signature a condition precedent to the formation of a contract.") (emphases added throughout).

Restatement provides a useful illustration:

> A sends a letter to B stating the terms of a proposed contract. At the end he writes, "You can accept this offer *only by* signing on the dotted line below my own signature." A replies by telegram, "I accept your offer." There is no contract.

Restatement (Second) of Contracts § 30 cmt. a, illus. 1 (emphasis added).

Second, courts "apply additional common law principles that reflect Texas public policy disfavoring conditions precedent." *Arbor Windsor Court*, 463 S.W.3d at 136. Because of their harsh effect, it is "a rule of construction that a forfeiture by finding a condition precedent is to be avoided when possible under another reasonable reading of the contract." *Schwarz-Jordan, Inc. of Houston v. Delisle Const. Co.*, 569 S.W.2d 878, 881 (Tex. 1978).

These interpretative principles are why Texas state and federal courts have emphasized that "'to make a signature a condition precedent to enforcement of a contract—including an arbitration agreement—the agreement must **clearly and explicitly** require a signature before it becomes binding.'" *Flores*, 2023 WL 6533452, at *1 (quoting *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 170 (Tex. App.—El Paso 2015, no pet.) (emphasis added)); *see also Border Gateway, L.L.C. v. Gomez*, No. 14-10-01266-CV, 2011 WL 4361485, at *3 (Tex. App.—Houston [14th Dist.] Sept. 20, 2011, no pet.) (explaining that "a condition precedent to contract formation is 'clearly' evidenced where an agreement unequivocally provides that a

party does not intend to be bound until the execution of a final contract.").

### III. No Language in Cadena's Arbitration Agreement Requires the Club's Signature.

Turning to the language in the Arbitration Agreement, the word "signature" first appears in the introductory paragraph—but only in reference to where the parties' specific names can be found: "[t]he 'Club' and 'Employee' are identified on the signature page of this Agreement." ROA.79.

The next three pages describe the "private 'arbitration' process" that the Club "has established," *i.e.*, initiating arbitration, scope of claims, arbitrator selection, waiver of collective actions, venue, *etc.* ROA.80-83. These core terms express "arbitration procedures that the parties agree to use with no reference to a signature requirement at all." *Flores*, 2023 WL 6533452, at *2, n. †.

That leaves the Arbitration Agreement's last page, which provides spaces for the parties' signatures. ROA.83. The full text above the signature block provides:

> By signing this Arbitration Agreement, Employee and the Club's representative represent that:
>
> - They have fully read this Agreement prior to signing it;
>
> - They have been provided a copy of this Agreement and have had opportunities to both ask questions regarding its content and have it reviewed by person of their choice . . . before they have signed it; and
>
> - They understand the terms of this Agreement and agree to be bound by them.

11

ROA.83 (capitalization and bold font removed).

No doubt, the Arbitration Agreement has "'more than a blank signature block that speaks to the parties' intent.'" ROA.224 (quoting *Huckaba*, 892 F.3d at 690). But it is what this contract *does not* say that speaks most loudly about the parties' intent. Nowhere does the Arbitration Agreement state that it 'must' or 'shall' be signed by both parties to become binding, effective, or agreed. Nor does it feature any language declaring that the parties do not agree to be bound, or that the contract will lack efficacy, 'unless,' 'until,' or 'only if' they sign. The absence of these kinds of expressions "is probative of the parties['] intention that a promise be made, rather than a condition imposed." *Criswell*, 792 S.W.2d at 948.

## A. The "by signing" clause reveals no intent to make signatures a condition precedent.

Next, while the district court focused on the signature page's language, it failed to apply the proposition that finding existence of a condition should be avoided if other reasonable readings are available. *See Schwarz-Jordan*, 569 S.W.2d at 881. Other readings are not only available, "Texas courts have held that similar language in contracts indicating that a signature functioned as an acknowledgment of the contract or contract's contents did not reflect the parties' intent to require signatures." *Aprill v. Aquila*, No. 20 C 04657, 2022 WL 614984, at *8 (N.D. Ill. Mar. 1, 2022).

For example, the "by signing" clause's first two bullet points state that "prior to signing it," the parties received a copy of the Arbitration Agreement, read it, and had opportunities to consult others about its terms. This language merely affirms what the parties' signatures represent—confirmation of past events—not that signatures are in themselves necessary conditions to assent and formation. *See, e.g.*, *McGehee*, 603 S.W.3d at 524 ("The first sentence of the quoted provision is a representation that the PSA *has been* duly executed and delivered by each of the parties *and constitutes* their binding obligations. It does not state that the PSA *must be* executed . . . .") (emphasis original).

The "by signing" clause's third bullet point is what the district court found compelling.[6] However, the court's recitation of that language deleted key words: the prepositional phrase "by signing this Arbitration Agreement" is followed by the main clause— "Employee and the Club's representative *represent that* . . . ." ROA.83 (emphasis added). Once the third bullet point is considered in its complete context, it functions as the parties' acknowledgement of what legal effect their signatures would hold even if the "by signing" clause were deleted. *See GSC Wholesale*, 654 S.W.3d at 568. But merely expressing the significance of the parties' signatures does

---

[6] *See* ROA.224 ("[t]he Arbitration Agreement contains clear and express language that the parties must sign the agreement to give it effect. . . ('BY SIGNING THIS ARBITRATION AGREEMENT . . . THEY UNDERSTAND THE TERMS OF THIS AGREMENT [sic] AND AGREE TO BE BOUND BY THEM.')") (modification original).

not mean they "clearly and explicitly" intended to make their autographs the exclusive vehicle for achieving that effect.

**B. The "by signing" passage recognizes—but does not *require*— signatures as *one* method of manifesting assent.**

Next, "[l]anguage referring to a particular mode of acceptance is often intended and understood as suggestion rather than limitation; the suggested mode is then authorized, but other modes are not precluded." Restatement (Second) of Contracts § 30 cmt. b. Following this principle, courts interpret "by signing" phrases lacking conditional or mandatory qualifiers as a "suggested acceptable method of acceptance but not a mandatory requirement for formation of the contract." *Tecore, Inc. v. AirWalk Communications, Inc.*, 418 S.W.3d 374, 386 (Tex. App.—Dallas 2013, pet. denied) (citing Restatement (Second) of Contracts § 60).

*Craddock v. LeClair Ryan, P.C.*, provides a persuasive analysis of similar phrasing. No. 3:16-CV-11, 2016 WL 1464562, at *5-6. (E.D. Va. Apr. 12, 2016). In *Craddock*, a law firm's Shareholder Agreement stated that "[e]ach Shareholder understands that by signing this agreement he or she agrees . . . to binding arbitration." *Id.* at *4. The plaintiff, who failed to sign the agreement, argued that she was not bound to arbitrate because she interpreted the "by signing" language as setting "forth only one manner of acceptance." *Id.* The *Craddock* court disagreed. While the phrase "by signing" certainly identified one valid method of acceptance,

that did not mean the parties intended to make signatures "the <u>only</u> permissible manner of acceptance." *Id.* at *5.

This fundamental principle applies in Texas. And there is no shortage of authority demonstrating that "by signing" is not "clear and explicit" evidence that what the parties truly meant to say was 'must sign.'[7]

### C. Courts do not interpret similar "by signing" language as clear and explicit evidence of intent absent conditional wording.

Next, the district court relied on *Huckaba* to support its conclusion that the Arbitration Agreement's signature block plus the "by signing" language added up to a requirement that the Club needed to sign too. ROA.224. However, *Huckaba* is distinguishable, and more recent decisions from the Court show that similar "by signing" verbiage does not automatically translate into 'clear and explicit' evidence of the parties' intent to impose a signature condition.

---

[7] *See, e.g.*, *GSC Wholesale*, 654 S.W.3d at 568 (explaining that "Accepted and Agreed on behalf of the Employer" above signature blocks did not "indicate[] that signature is the *only* way the Employer may manifest assent.") (emphasis added); *Aprill*, 2022 WL 614984, at *8 (finding that "[b]y signing this Agreement, Employee acknowledges" waiver of right to sue "does not establish that signatures were required" under Texas law); *see Robertson v. Fiesta Rest. Group, Inc.*, No. 3:17-CV-00384, 2018 WL 3130677, at *6, n.3 (S.D. Tex. June 8, 2018), report and rec. adopted, 2018 WL 3121877 (S.D. Tex. June 26, 2018) (finding that "[b]y signing below, you acknowledge that you are agreeing to have Claims . . . finally decided in private arbitration and not in court" did not "clearly and explicitly" require employee's signature); *see also Hickerson v. Pool Corp.*, No. 19-CV-02229-CMA-STV, 2020 WL 5016938, at *4 (D. Colo. Aug. 25, 2020) (citing *Craddock* and finding the phrase "'by their signatures'" indicated "one manner of manifesting assent to the Agreement, but it does not preclude parties from binding themselves to the Agreement in other ways" under Colorado, Virginia, Michigan, and California law).

*Huckaba* involved an arbitration agreement with two signature blocks, one of which the employer did not sign. *See Huckaba*, 892 F.3d at 689. Although the agreement stated that "[b]y signing this agreement the parties are giving up any right they may have to sue each other," that language, standing alone, is not what drove the Court's conclusion that the employer's failure to sign precluded contract formation. Rather, it was "a clause prohibiting modifications unless they are 'in writing and signed by all parties'" that "clearly" demonstrated the parties' intent to make both parties' signatures a condition to formation. *Id.* Indeed, conditional language tethering the efficacy of modifications or amendments to the presence of the parties' signatures is what other courts have found compelling in this context. *See, e.g.*, *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 211 (Tex. App.—El Paso 2004, no pet.) ("No modification or amendment of any provision of this Agreement is effective *unless* it is in writing and signed by the parties to this Agreement.") (emphasis added).

However, neither *Huckaba* nor cases like *Bunzl* are on point because nothing in the parties' "Arbitration Agreement requires that amendments be in writing and signed." *GSC Wholesale*, 654 S.W.3d at 567; *see also Wright v. Hernandez*, 469 S.W.3d 744, 760 (Tex. App.—El Paso 2015, no pet.) (distinguishing *Bunzl* where the agreement did not require signatures on the agreement or modifications).

While the Arbitration Agreement lacks a provision barring future unsigned amendments, it does have a "superseding effect" clause. ROA.82 ("the arbitration provisions of this Agreement supersede any prior arbitration agreement(s) entered into between the Club and the Employee."). This language shows that the parties did not have signatures in mind. Not only does the superseding clause lack any conditional terminology, the parties specifically used "entered into" instead of 'any prior arbitration agreement(s) *signed by*' the Club and Employee.

More helpful than *Huckaba* are decisions from this Court in which "by signing" language appeared *without* any surrounding conditional language. In *Soni v. Solera Holdings, L.L.C.*, for example, the arbitration agreement included "'[b]y signing this Agreement, Employee acknowledges . . .'" and signature boxes for the employee and employer to check. No. 21-10428, 2022 WL 1402046, at *1 (5th Cir. May 4, 2022). The employee argued that this language meant the employer's failure to countersign prevented formation, but the *Soni* court disagreed. "None of the agreement's above-described references to a signature clearly establish [the employer's] signature was a condition precedent." *Id*. at *4.

In *Flores*, the district court's order denying a motion to compel arbitration discussed an agreement that lacked an employer signature space but referenced the parties' signatures three times: two statements that "by signing" the parties waived

all rights to a trial, and another that provided "this Agreement . . . may be modified only in a writing . . . signed by" both parties. *See Flores v. BJ's Restaurants, Inc.*, No. A-21-CV-1185-LY, 2022 WL 17732340, at *2 (W.D. Tex. Oct. 17, 2022). Given this language, the trial court found that the employer's failure to sign was fatal to formation. *Id.* at *3-4.

On appeal, this Court reversed—despite the presence of language requiring that modifications be written and signed by both sides deemed crucial in *Huckaba*. Coupled with absence of a signature block for the employer, the Court characterized the "three scattered mentions of 'signing'" as insufficient "to 'clearly and explicitly require a signature.'" *Flores*, 2023 WL 6533452, at *2 (quoting *Firstlight*, 478 S.W.3d at 170).

The takeaway from *Huckaba*, *Soni*, and *Flores* is that even if an arbitration agreement affords spaces for one or both parties to sign, "by signing" language is not enough. If the parties intend to make their signatures a condition precedent, their contract must also feature *some* conditional phrase that *requires* those signatures.

The Arbitration Agreement in this case is bereft of any imperative, mandatory, contingent, or conditional expression tied to signatures. While the R&R states that the "question of Defendants' intent is answered by the agreement they drafted," ROA.224, the district court effectively redrafted that agreement by adding non-

existent conditional wording. But "[p]lain language forbids judicial ad-libbing. Here, the text is clear. And, at least in Texas, clear text = controlling text." *Weaver v. Metro. Life Ins. Co.*, 939 F.3d 618, 627 (5th Cir. 2019).

## IV.    The Parties' Acts Show Their Mutual Assent to the Arbitration Agreement.

Finally, though Cadena self-servingly claims that her "signature in the Benelux signature block does not indicate [her] intent to be bound by this agreement if Benelux did not sign it," ROA.138, her "[u]nexpressed subjective intent is irrelevant." *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Questions of contract formation—offer, acceptance, and mutual assent—are "based on the objective standard of what the parties said and did and not on their subjective state of mind." *Id*. What *is* relevant here are Cadena's objective expressions of intent represented by her thorough signing of the Arbitration Agreement.

### A. Cadena's objective conduct shows her acceptance of the Club's offer to arbitrate.

First, by presenting the Arbitration Agreement to Cadena, the Club made a "clear and definite" offer to mutually arbitrate claims. *See Angelou*, 33 S.W.3d at 278; Restatement (Second) of Contracts § 24 ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in

understanding that his assent to that bargain is invited and will conclude it.").

Second, Cadena made a "clear and definite acceptance of all terms contained in the offer" in the manner invited—she initialed each page and ensured no signature line was left unsigned. *See Angelou*, 33 S.W.3d at 278. Cadena then delivered the fully signed contract to the Club, binding the parties.

Third, if the Arbitration Agreement hypothetically had any text requiring the Club's countersignature, then upon its presentation to Cadena, the Club only made an 'invitation to offer.' *See* Restatement (Second) of Contracts § 26 ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent."). In that scenario, the objective actions of Cadena, as offeror, show she had *no* intent to require the Club's signature as the exclusive method of acceptance, let alone expectation of a future manifestation of assent by way of signature. After all, since she signed both signature blocks, the Club would have had to strikethrough her writing or sign over it. *See Ames v. Great S. Bank*, 672 S.W.2d 447, 449 (Tex. 1984) (stating that the "[p]erformance of a condition precedent . . . can be waived or modified by the party to whom the obligation was due by word or deed.").

### B. The Club's actions manifested its mutual assent.

Finally, the Club proved that it intended to be bound despite failing to sign. *See Wright*, 469 S.W.3d at 760. When a contract lacks one party's signature, "a court may look to other evidence to establish the parties' assent to the terms of an agreement." *Firstlight*, 478 S.W.3d at 168. Evidence courts consider includes "the employer's act of drafting the arbitration agreement, its actions in maintaining the agreement as a business record, and its actions in moving to enforce the agreement when the employee filed suit against it." *Wright*, 469 S.W.3d at 761.

The Club submitted undisputed evidence that satisfies Texas law. In his declaration, Mealey stated that "[t]he Club, through its attorneys, created the Arbitration Agreement." ROA.74. He explained how the Arbitration Agreement is maintained as a business record: "it is sent to the Club's corporate office, where an office manager is responsible for keeping and maintaining signed Arbitration Agreements . . . ." ROA.75. And shortly after Cadena filed suit, the Club moved to enforce the Arbitration Agreement. ROA.56.

The Club's uncontroverted evidence—drafting, offering, receiving and insisting on Cadena's performance of the Arbitration Agreement—objectively demonstrated its assent without need for signing the contract. "Texas courts have found that these considerations evince an employers' intent to be bound even when

they did not sign arbitration agreements." *Flores*, 2023 WL 6533452, at *2.

## CONCLUSION

For these reasons, Appellants Benelux Corporation d/b/a Palazio Men's Club, Anthanases Stamatopoulos, and Michael Mealey, respectfully ask the Court to reverse the district court's Order and remand with instructions to issue an order compelling Appellee Belen Cadena to arbitrate her claims as agreed.

Respectfully signed,

MCDOWELL HETHERINGTON LLP

*/s/ William X. King*
William X. King
Texas Bar No. 24072496
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Tel.: (713) 221-3840
Fax: (713) 337-8850
william.king@mhllp.com
**COUNSEL FOR APPELLANTS**

## CERTIFICATE OF SERVICE

I certify that on March 28, 2025, the foregoing Brief of Appellants was filed and served via the Court's CM/ECF filing system upon the following counsel of record for Appellee Belen Cadena:

Ryan Estes
Caitlin Boehne
Tanner Scheef
Kaplan Law Firm
2901 Bee Cave Road, Suite G
Austin, Texas 78746
Tel.: (512) 814-7348
Fax: (512) 692-2788
restes@kaplanlawatx.com
cboehne@kaplanlawatx.com
tscheef@kaplanlawatx.com
**COUNSEL FOR APPELLEE BELEN CADENA**

*/s/ William X. King*
William X. King

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B). Excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,050 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word for Office 365 in 14-point font size and Equity Text A type style, except for 12-point footnotes.

Dated: March 28, 2025

*/s/ William X. King*
William X. King