# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

OCTAVIA MERTENS, ON BEHALF OF THEMSELF AND OTHERS SIMILARLY SITUATED; ANGELICA HERRERA, ON BEHALF OF THEMSELF AND OTHERS SIMILARLY SITUATED; BELEN CADENA, ON BEHALF OF THEMSELF AND OTHERS SIMILARLY SITUATED; KELLY SANCHEZ, ON BEHALF OF THEMSELF AND OTHERS SIMILARLY SITUATED; MAGGIE MONTES, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED; BREONA HORNE, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellees*

*v.*

BENELUX CORPORATION, doing business as PALAZIO MEN'S CLUB, ANTHANASES STAMATOPOULOS, MICHAEL MEALEY,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
Civil Action No. 1:24-cv-00276-RP
Hon. Robert Pitman, Presiding

## BRIEF OF APPELLEE

Caitlin Boehne
Texas Bar No. 24075815
KAPLAN LAW FIRM, PLLC
2901 Bee Cave Rd,
Austin, Texas 78746
Tel.: (512) 814-7348
**COUNSEL FOR APPELLEE**

# CERTIFICATE OF INTERESTED PERSONS

Case No. 1:24-cv-00276-RP, *Octavia Mertens., et al. v. Benelux Corporation, d/b/a Palazio Men's Club, et al.*, United States District Court, Western District of Texas, Austin Division.

******

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate their possible recusal or disqualification.

## Plaintiffs Below
Belen Cadena (Appellee)
Angelina Herrera
Octavia Mertens
Kelly Sanchez
Maggie Montes
Breona Horne

## Defendants/Appellants
Benelux Corporation d/b/a
Palazio Men's Club ("Club")
Anthanases "Tom" Stamatopoulos
Michael Mealey

## Putative Opt-Ins
Louisa Arocha
Ana Pierson
Andrea Radzik
Brianna Haynes

## Appellee's Counsel
Ryan Estes
Caitlin Boehne
Tanner Scheef

Austin Kaplan
Kaplan Law Firm, PLLC
2901 Bee Cave Rd., Suite G
Austin, Texas 78746

**<u>Appellants' Counsel</u>**
William X. King
McDowell Hetherington LLP
1001 Fannin Street, Suite 2400
Houston, Texas 77002

/s/ *Caitlin Boehne*
Caitlin Boehne
**Counsel for Appellee**

**STATEMENT REGARDING ORAL ARGUMENT**

Because this appeal involves the application of well-established principles of contract interpretation under Texas law, Appellee respectfully suggests that oral argument is unnecessary to aid the Court's decisional process.

# TABLE OF CONTENTS

Contents……………………………………………………………………Pages(s)

CERTIFICATE OF INTERESTED PERSONS..... **Error! Bookmark not defined.**

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS...................................................................... iv

TABLE OF AUTHORITIES ...................................................................1

STATEMENT OF THE ISSUES...............................................................3

STATEMENT OF THE CASE................................................................3

SUMMARY OF THE ARGUMENT ......................................................4

ARGUMENT .....................................................................................4

I.   STANDARD OF REVIEW..........................................................4

II.   The District Court Correctly Found That No Arbitration Agreement Exists
to Enforce.........................................................................................5

   A.   Appellants Failed to Sign Their Own Agreement that Required Both
Parties' Signatures to be Binding.......................................................6

   B.   Appellants Fail to Identify Controlling Authority Suggesting Signatures
are Not a Condition Precedent in Comparable Agreements. .............................8

III.   The District Court Correctly Concluded that Appellants' Extra-Contractual Conduct was Irrelevant because Signatures were a Condition Precedent to the Agreement Appellants Failed to Sign........................................12

    A.   The District Court Correctly Concluded that Appellee Cadena's Signature Does Nothing to Alter Appellants' Intent. ........................................12

    B.   Extra-Contractual Facts, Such as the Parties' Conduct, Need Not Be Considered When the Language of the Contract Makes the Parties' Intent Clear.. ...............................................................................................13

CONCLUSION.......................................................................................................17

CERTIFICATE OF SERVICE ...............................................................................18

CERTIFICATE OF COMPLIANCE.......................................................................19

# TABLE OF AUTHORITIES

## CASES

*Aprill v. Aquila,*
  No. 20 C 04657, 2022 WL 614984, at *7 (N.D. Ill. Mar. 1, 2022) ......................7

*Baylor Univ. v. Sonnichsen,*
  221 S.W.3d 632, (Tex. 2007) (per curiam) ..........................................................5

*Craddock v. LeClair Ryan,*
  *PC*, No. 3:16-CV-11, 2016 WL 1464562 (E.D. Va. Apr. 12, 2016) ....................7

*Cure & Assocs., P.C. v. LPL Fin. LLC,*
  118 F.4th 663, (5th Cir. 2024)................................................................................3

*Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.,*
  588 F.2d 884, (5th Cir. 2009)..................................................................................4

*Flores v. BJ's Rest. Operations Co.,*
  2023 WL 6533452 (5th Cir. Oct. 6, 2023) ................................................. 8, 14, 15

*GSC Wholesale, LLC v. Young* and *Robertson v. Fiesta Rest. Group, Inc.* ..............9

*Hinkley v. Envoy Air,*
  968 F.3d 544, (5th Cir. 2020).................................................................... 8, 13, 15

*Huckaba v. Ref-Chem, L.P.*
  892 F.3d 686, (5th Cir. 2018).................................................................... 8, 11, 12

*Italian Cowboy Partners, Ltd. V. Prudential Ins. Co. of Am.,*
  341 S.W.3d 323, (Tex. 2011) ...............................................................................14

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, (Tex. 2003)..........................4, 11

*Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, (5th Cir. 2013)..........................4

1

*McGehee v. Endeavor Acquisitions, LLC* ...............................................................9

*Noble Cap. Fund. Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.*, 31 F.4th 333, (5th Cir. 2022) .............................................................................3

*Soni v. Solera Holdings, LLC*, No. 21-10428, 2022 WL 1402046, at *1 (5th Cir. May 4, 2022).........................................................................................7

**OTHER AUTHORITIES**

§ 226 cmt. a (2004) ...............................................................................10

## STATEMENT OF THE ISSUES

This case presents a narrow question of contract formation—did Appellants assent to be bound to their arbitration agreement when they failed to sign it where there are signature blocks for both parties and other express language in the agreement indicating both parties' signatures are required to give it binding effect?

## STATEMENT OF THE CASE

Appellee Belen Cadena was employed as a waitress at Appellant Benelux Corporation's strip club, known as The Palazio, which was run by the individual Appellants, Anthanases Stamatopoulous and Michael Mealey in Austin, Texas. Ms. Cadena and her co-workers brought the instant suit against Appellants as a collective action under the Fair Labor Standard Act (FLSA) for unpaid wages and as a class action for filing fraudulent income tax reports. ROA.184. Ms. Cadena alleges that Appellants' managers took tips given to her and the other waitstaff for themselves, in clear violation of the FLSA. Appellant Benelux fraudulently reported to the IRS that Ms. Cadena and other waitstaff had in fact earned the amounts it required them to tip to managers and other staff, which led to increased tax liability on income they did not receive.

Appellants produced fully executed arbitration agreements for all Named Plaintiffs and Opt-In Plaintiffs except for Ms. Cadena, Ms. Montes, and Ms. Horne. The Named Plaintiffs and Opt-In Plaintiffs that were shown fully executed

arbitration agreements did not contest Appellants' motion to compel arbitration. The arbitration agreement for Ms. Cadena at issue in this appeal was only signed by Ms. Cadena and no representative from Appellant.

## SUMMARY OF THE ARGUMENT

Appellants have failed to produce—and cannot produce—an enforceable, executed agreement to arbitrate between Ms. Cadena and Appellants. This is because Appellants did not sign the arbitration agreement they are attempting to enforce even though their own agreement requires *both parties* to sign the arbitration agreement to be binding. Appellants' brief utilizes tortured linguistic analysis to deny the plain meaning of the contract Appellant Benelux authored.

## ARGUMENT

### I.    STANDARD OF REVIEW

The Fifth Circuit generally reviews de novo a district court's denial of a motion to compel arbitration when the issue is whether a valid arbitration agreement exists. *Cure & Assocs., P.C. v. LPL Fin. LLC*, 118 F.4th 663, 668–69 (5th Cir. 2024); *Noble Cap. Fund. Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.*, 31 F.4th 333, 335–36 (5th Cir. 2022). Because this case concerns contract formation—not equitable estoppel, waiver, or enforcement against non-signatories—the de novo standard applies.

## II.   The District Court Correctly Found That No Arbitration Agreement Exists to Enforce.

In the Fifth Circuit, a party seeking to compel arbitration must establish: "(1) there is a valid contract to arbitrate; and (2) the dispute falls within the scope of that agreement." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). This case turns on the first question. A party cannot be compelled to arbitrate unless they have agreed to. *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.2d 884, 886 (5th Cir. 2009). State contract law applies to the question of whether an arbitration agreement exists. *Huckaba*, 892 F.3d at 688. Importantly, at this stage, there is no presumption in favor of arbitration under state or federal law. *Id.* at 688–89 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) and *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)).

Under Texas state law, "a binding contract requires: '(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.'" *Huckaba*, 892 F.3d at 689. The fifth element is in dispute in this appeal. "Contracts require mutual assent to be enforceable." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam). "Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Id.*

## A. Appellants Failed to Sign Their Own Agreement that Required Both Parties' Signatures to be Binding.

Relying on recent Fifth Circuit precedent, the district court held that Appellants' arbitration agreement failed to be formed because the fifth prong was not met. ROA.258, 260 (citing to magistrate's report and recommendation at ROA.224, relying on *Huckaba* 892 F.3d at 690–91). This is because here, like in *Huckaba*, there is no dispute that the arbitration agreement contained a signature block that went unexecuted by Appellants and, further, that the express language of the agreement demonstrated Appellants' intent to be bound by its signature. ROA.79–83; *Huckaba*, 892 F.3d at 689–90. In *Huckaba*, this Court reversed an order compelling arbitration "[b]ecause the express language of the agreement at issue requires for it to be signed by both parties and because it is undisputed that [the employer defendant] did not sign the agreement." *Huckaba*, 892 F.3d at 687.

Appellants argue that the arbitration agreement's express language does not make its signature a condition precedent to execution. Neither the magistrate judge nor the district court found that argument persuasive because it flies in the face of a plain reading of the contract.

The magistrate's report correctly noted that here, like in *Huckaba*, both agreements contain unsigned signature blocks for the employer (ROA.223), the first lines of the contracts identify the two parties to the contract as the employee and the employer (ROA.222), and there is additional express language contemplating both

parties' signatures (ROA.224). In *Huckaba*, that additional express language was a clause that only permitted written modifications signed by both parties. *Huckaba*, 892 F.3d at 689. Here there is even more express language showing the Appellants' intent to be bound by their signature. Just above both signature lines, the arbitration agreement contains the following text:

> BY SIGNING THIS ARBITRATION AGREEMENT, EMPLOYEE AND THE CLUB'S REPRESENTATIVE REPRESENT THAT:
>
> • THEY HAVE FULLY READ THIS AGREEMENT PRIOR TO SIGNING IT;
>
> • THEY HAVE BEEN PROVIDED A COPY OF THIS AGREEMENT AND HAVE HAD OPPORTUNITIES TO BOTH ASK QUESTIONS REGARDING ITS CONTENT AND HAVE IT REVIEWED BY PERSONS OF THEIR CHOICE, INCLUDING BY ATTORNEYS AND ACCOUNTANTS, BEFORE THEY HAVE SIGNED IT; AND
>
> • THEY UNDERSTAND THE TERMS OF THIS AGREEMENT AND AGREE TO BE BOUND BY THEM.

ROA.83. The language above the signature block says "**by signing** this arbitration agreement, employee and **the club's representative** represent that….they understand the terms of this agreement and **agree to be bound by them**." *Id*. This language could not more plainly indicate that the intent of Appellant Benelux—*the drafter of the agreement*—was to require its representative's signature to be bound by the arbitration agreement. Notably, the arbitration agreement's "by signing" clause doesn't say that "the Club" represents anything—it specifies that the Club's **representative** makes the representations that follow, upon signing. This language clearly indicates that a specific individual—on behalf of the Club—was slated to sign the agreement to give it effect. The district court properly found that Appellants did not sign the agreement and there was no agreement to arbitrate.

**B.** **Appellants Fail to Identify Controlling Authority Suggesting Signatures are Not a Condition Precedent in Comparable Agreements.**

Appellants cite to a handful of inapposite, mostly out-of-circuit district court opinions to support the proposition that "by signing" language does not necessarily require a signature. Appellants' Brief at 15, n. 7. As a threshold matter, because Texas state contract law is at issue, any decisions from out of state, let alone out of circuit, have minimal bearing on this case. Moreover, these cases are by and large distinguishable from the issue at hand—for example, because the "by signing" language reference one party only, or the there is no mention of the "by signing language" coupled with an employer's unsigned, signature block. *Soni v. Solera Holdings, LLC*, No. 21-10428, 2022 WL 1402046, at *1 (5th Cir. May 4, 2022) (agreement states "[b]y signing this Agreement **Employee** acknowledges"); *Aprill v. Aquila*, No. 20 C 04657, 2022 WL 614984, at *7 (N.D. Ill. Mar. 1, 2022) (agreement states "by signing this Agreement, **Employee** acknowledges"); *Craddock v. LeClair Ryan, PC*, No. 3:16-CV-11, 2016 WL 1464562 (E.D. Va. Apr. 12, 2016) (no reference to any unsigned signature block for the employer, question was solely whether agreement was executed because *employee* failed to sign).

Appellants also point to a 2023 unpublished Fifth Circuit opinion reversing the denial of a motion to compel arbitration on an agreement not signed by the employer with "by signing" language to cast doubt on *Huckaba's* holding.

Appellants' Brief at 18, citing *Flores v. BJ's Rest. Operations Co.*, No. 23-50038, 2023 WL 6533452 (5th Cir. Oct. 6, 2023) (unpublished).

But *Flores* is not on point. In *Flores*, there was no signature line for the employer to sign— a factor this Court gave great weight to, as it should here. *Flores*, 2023 WL 6533452, at *1 ("Perhaps most importantly, there is no place for BJ's to sign the agreement."). Appellants' argument about how the *Flores* court weighed the rest of the language in the contract is of no relevance to this case. Appellants' own agreement has a signature line for it to sign and Appellants failed to sign the agreement.

Further, this Court has held that unpublished opinions are "not precedent" and "fundamentally, a published opinion controls over an unpublished opinion, regardless of the opinions' timing." *Hinkley v. Envoy Air*, 968 F.3d 544, 554 (5th Cir. 2020).

Appellants cite other authority where agreements' "by signing" language was deemed insufficient to require a signature, but the facts of those cases are readily distinguishable from those at issue here. Specifically, the "by signing" language was just one aspect of the agreements that otherwise did clearly indicate that signatures were not required to bind the parties.

In *GSC Wholesale, LLC v. Young* and *Robertson v. Fiesta Rest. Group, Inc*., both agreements had clauses deeming an employee's employment, or the

performance of their job duties, acceptance or an agreement to arbitrate. 654 S.W.3d 558, 564–65 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (arbitration agreement stated "your first day of employment or reemployment will automatically constitute your acceptance of all the terms and conditions of this Agreement," "your continuation of employment . . . on or after the Effective Date will constitute your acceptance," and "If you commence . . . employment with an Employer . . . you and the Employer hereby automatically and mutually agree"); 2018 WL 3130677, at *6 (S.D. Tex. Jun. 8, 2018), adopted, 2018 WL 3121877 (S.D. Tex., Jun. 26, 2018) (arbitration agreement stated agreeing to arbitration was a condition of employment).

There is no language in the instant agreement indicating that Ms. Cadena's employment or continued employment would constitute acceptance of the agreement—only the signature of both parties on the agreement demonstrates acceptance on Appellants' agreement. Further, in *GSC Wholesale*, the agreement specifies that the arbitration agreement is a "mandatory and binding condition of your employment" and exists regardless of whether or not employee signs. 654 S.W.3d at 564, 567. Likewise, there is no such language in Appellants' agreement.

In *McGehee v. Endeavor Acquisitions, LLC*, there is no "by signing" language in the agreement at issue, and Appellants stretch to argue that a sentence representing past actions ("This Agreement **has been duly executed and delivered** . . . and

constitutes their legal and binding obligations") that was relevant to the court's decision finding signatures were not required is applicable here. 603 S.W.3d 515, 524 (Tex. App.—El Paso 2020, no pet.). It is not—namely because that language is not a present representation of what the parties are achieving through their execution of the agreement, but a recitation of past events that have already occurred.

Here, the pertinent language in Appellants' "by signing" clause ("by signing this agreement, the [parties] **represent** that . . . they **understand** the terms of this agreement and **agree** to be bound by them") has no language in the past tense, only language in the present tense. ROA.83.

Appellants' agreement has more than just the "by signing" clause in the contract's express language to conclude that the contract itself anticipated multiple signatories. Though Appellants insist that some conditional language (e.g. including "if," "unless," or "until") should be present to indicate a condition precedent, its own cited authority indicates otherwise. Restatement (Second) of Contracts notes that "no particular words are required to make an event a condition precedent." § 226 cmt. a (2004). In Texas, "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

The district court correctly concluded that the facts do not satisfy Appellants'

burden to show that Appellants intended to be bound without signing Appellants'

own agreement. As this Court concluded in *Huckaba*, to hold otherwise would allow

Appellants to have it both ways and avoid having the agreement enforced against

them (by arguing that they are not bound by an agreement they did not sign) while

still enforcing the agreement itself if and when they choose. *See Huckaba*, 892 F.3d

at 691.

## III. The District Court Correctly Concluded that Appellants' Extra-Contractual Conduct was Irrelevant because Signatures were a Condition Precedent to the Agreement Appellants Failed to Sign.

Appellants improperly raised—and the district court properly rejected—extra-

contractual conduct as having any bearing on the outcome because its own

agreement required both parties' signature to make it binding.

The proper question is whether there was "execution and delivery of the

contract with intent that it be mutual and binding." *Huckuba*, F.3d 892 at 689; *In re

Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012). The Court need not

consider any because the language of the agreement they drafted is sufficiently clear.

## A. The District Court Correctly Concluded that Appellee Cadena's Signature Does Nothing to Alter Appellants' Intent.

Appellants unpersuasively argue that Ms. Cadena signing twice absolves them

of *their own arbitration agreement's requirement* that both parties sign it to be

bound. Appellants' Brief at 20. An immaterial difference between this case and

*Huckaba* is that the employer's signature block was not left completely blank

because it was signed by the employee. *Id*.

The question at issue, which is clearly established by Fifth Circuit precedent, is whether or not Appellants' signature was required in order to give their agreement effect. Regardless of whether the signature block is blank or—as here— inadvertently filled in by the employee does not matter because of the express language of the agreement, which required both parties' signatures to be effective. This difference does not change the plain language of Appellants' agreement requiring both parties' signatures to be bound by the agreement. And Ms. Cadena filling in the employer's signature block did not preclude the employer from also signing somewhere on the signature page, which it failed to do.

In keeping with *Huckaba*, Ms. Cadena did not intend to be bound by the arbitration agreement until and unless Appellants also signed the agreement and agreed in writing to be bound by its terms. *See* ROA.138–139. Likewise, Ms. Cadena did not discuss the arbitration provision with anyone or orally agree to arbitration. ROA.139.

## B. Extra-Contractual Facts, Such as the Parties' Conduct, Need Not Be Considered When the Language of the Contract Makes the Parties' Intent Clear.

Appellant Mealey admits—in a declaration drafted over four years after the arbitration agreement was presented to Ms. Cadena—that Appellants do not have a fully executed arbitration agreement with Ms. Cadena. ROA.76. In his declaration,

Appellant Mealey implausibly asserts that the "Club accepted [Ms. Cadena's] signed agreement and considers it to be effective and binding on all parties." ROA.76. In this appeal, Appellants claim that "drafting, offering, receiving and insisting on Cadena's performance of the Arbitration Agreement" is sufficient to show its assent without signing the agreement. Appellants' Brief at 21. These unsubstantiated assertions and Appellant Mealey's description of the circumstances explaining why a Benelux signature does not appear on the document have no bearing on whether Appellants have an enforceable arbitration agreement against Ms. Cadena. The unambiguous language of the agreement requires both parties to sign to be bound by its terms and Appellants did not sign it.

Notably, in *Huckaba*, this Court found several extra-contractual factors related to the parties' conduct unpersuasive to support the defendant's argument that it intended to be bound without its signature. *Huckaba* 892 F.3d at 690. These factors include that the defendant created the arbitration agreement, kept it as a business record, and moved to compel arbitration when the plaintiff sued. *Id.* Likewise, this Court found that the plaintiff-employee's performance under the employment contract without the defendant-employer's signature was irrelevant to the analysis of the defendant's intent to be bound, when the agreement contained no language indicating that the plaintiff-employee's commencing work constituted acceptance and bound the parties. *Id.*

Appellants point to similar, extra-contractual facts in support of their appeal, which the Court need not consider at all. Appellants' Brief at 21. This Court, in *Huckaba*, concluded that the employers' intent was solely manifested by the language of the contract it had drafted. *Huckaba* 892 F.3d at 689 ("'We begin this analysis with the contract's express language.' And we end it there too.") (internal citation omitted). This is supported by Texas contract law. *Italian Cowboy Partners, Ltd. V. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) ("In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself.")

In support of their position that this Court should consider those extra-contractual facts, Appellants rely on its previous ruling in *Flores v. BJ's Restaurant Operations Company*. 2023 WL 6533452, at \*1–2 (5th Cir. 2023) (unpublished). As discussed *supra*, at II. A., *Flores'* holding does not disturb *Huckaba's* rationale that analysis of extra-contractual facts is not necessary for two reasons, both of which apply here.

First, because in *Huckaba* and the instant case, the agreements contained an employer's signature block with additional contractual language indicating that a signature was required to give the contract effect, whereas in *Flores*, the agreement contained no employer signature block. 2023 WL 6533452, at \*1. And second, an unpublished opinion does not control over a published opinion, regardless of the

opinions' timing. *Hinkley v. Envoy Air*, 968 F.3d 544, 554 (5th Cir. 2020) ("[A]n unpublished decision issued after 1 January 1996 is 'not precedent'' and "fundamentally, a published opinion controls over an unpublished opinion, regardless of the opinion's timing") (quoting 5th Cir. R. 47.5.4).

Put differently, a signature block is not dispositive evidence that Appellants intended to require their signature to be bound under Texas law; courts need only consider the plain text of the agreement to conclude Appellants' intent. Moreover, the importance of a signature block in evincing a party's intent regarding whether it expects to be bound by its signature cannot be overstated—indeed, it was the "most important" fact considered by this Court in *Flores*. 2023 WL 6533452, at *1 ("Perhaps most importantly, there is no place for BJ's to sign the agreement.")

Here, the arbitration agreement is non-existent because its explicit text demonstrates an intention that the parties only be bound if their signatures were applied, and no Appellant signed the agreement.

To hold otherwise would allow Appellants to have it both ways: claiming that they are bound by the unsigned, unexecuted arbitration agreement now, only when it intends to enforce it over four years later, when they could just as easily have argued that they were not bound by the agreement because they had not signed it. By the terms of their own agreement, Appellants did not agree to be bound. This Court prevented the inherent unfairness of this exact situation with its ruling in *Huckaba*.

892 F.3d at 691. This Court should likewise hold Appellants to account by denying their appeal on the grounds that no valid arbitration agreement was formed between them and Ms. Cadena.

## CONCLUSION

The Court should affirm the district court's order.

Respectfully submitted,

/s/ *Caitlin Boehne*
**Caitlin Boehne**
Texas Bar No. 24075815
cboehne@kaplanlawatx.com
**Austin Kaplan**
Texas Bar No. 24072176
akaplan@kaplanlawatx.com
**Ryan Estes**
Texas Bar No. 24120586
restes@kaplanlawatx.com

**KAPLAN LAW FIRM, PLLC**
2901 Bee Cave Road, Suite G
Austin, Texas 78746
Tel.: (512) 814-7348
Fax: (512) 692-2788
COUNSEL FOR PLAINTIFF-APPELLEE

**CERTIFICATE OF SERVICE**

I certify that on April 28, 2025, the foregoing Brief of Appellee was filed and served via the Court's CM/ECF filing system upon the following counsel of record for Appellants:

William X. King
McDOWELL HETHERINGTON LLP
Texas Bar No. 24072496
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Tel.: (713) 221-3840
Fax: (713) 337-8850
william.king@mhllp.com
**COUNSEL FOR APPELLANTS**

/s/ Caitlin Boehne
Caitlin Boehne

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5th CIR. R. 32.1: this document contains 3,893 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Times New Roman font, 14-point type case, except for 12-point footnotes.

/s/ Caitlin Boehne
Caitlin Boehne

COUNSEL FOR PLAINTIFF-APPELLEE

Dated: April 28, 2025